**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DAVID ANDREW WELSH,

      *Plaintiff,*　　　　　　　　**CASE NO.: 2:22-cv-1718**

      *v.*

THE GOODYEAR TIRE & RUBBER
COMPANY, MATT MEYERS
AND JIM MORRELL,

      *Defendants.*

## COMPLAINT IN CIVIL ACTION

David Andrew Welsh, by and through his undersigned counsel, The Workers' Rights Law Group, LLP, and specifically, Kyle H. Steenland, Esquire, files the within Complaint in Civil Action, averring as follows:

## INTRODUCTION

1.　　Plaintiff, David Andrew Welsh (hereinafter, "Plaintiff"), is an adult individual who currently resides at 312 Westminster Avenue, Greensburg, Pennsylvania 15601.

2.　　Defendant, The Goodyear Tire & Rubber Company (hereinafter, individually referred to as "Defendant GY"), is a foreign business corporation with operations at 9435 State Route 30, Irwin, Pennsylvania 15642 (hereinafter, the "Irwin Facility").  Defendant GY's commercial registered agent is Corporation Service Company, located at 2704 Commerce Drive, Suite B, Harrisburg, Pennsylvania 17110.  Defendant GY's domiciled state is Ohio with a registered business address of 1144 East Market Street, Akron, Ohio 44316.

3.      Defendant, Matt Meyers, at all times relevant herein, was a supervising employee of Defendant GY, and he exerted influence and control over the terms and conditions of Plaintiff's employment with Defendant GY (hereinafter, individually referred to as "Defendant Meyers").

4.      Defendant, Jim Morrell, at all times relevant herein, was a supervising employee of Defendant GY, and he exerted influence and control over the terms and conditions of Plaintiff's employment (hereinafter, individually referred to as "Defendant Morrell") (hereinafter, Defendant GY, Defendant Meyers and Defendant Morrell are collectively referred to as "Defendants").

## JURISDICTION AND VENUE

5.      This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff brings this lawsuit asserting violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (hereinafter, the "FLSA").

6.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because Plaintiff alleges violations of the Pennsylvania Minimum Wage Act of 1968, 43 Pa. Cons. Stat. § 333.101, *et seq.* (hereinafter, the "MWA"), the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.* (hereinafter, the "WPCL"), and asserts Pennsylvania state common law claims for breach of contract and unjust enrichment. Ultimately, as explained more thoroughly below, the factual basis for the Pennsylvania statutory and common law claims are so related to the FMLA claims that they form part of the same case or controversy under Article III of the United States Constitution.

7.      Venue is also proper in this Court because Plaintiff is a resident and citizen of Pennsylvania and a substantial part of the events or omissions giving rise to the claims averred herein occurred in the Borough of Irwin, Westmoreland County, which is located within the

geographical confines of the United States District Court for the Western District of Pennsylvania. Therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

8.    This Court has personal jurisdiction over Defendants because Defendants routinely and regularly conduct business in the Commonwealth of Pennsylvania and routinely and regularly solicit business in Pennsylvania.  Further, as averred more fully below, Defendants violated numerous statutory provisions of Pennsylvania law and Pennsylvania common law, and a vast majority of the events giving rise to Defendants' unlawful conduct, including the harm that Plaintiff sustained therefrom, occurred in Pennsylvania. As such, this Court, at bare minimum, may exercise personal jurisdiction over Defendant because Defendant has the required minimum contacts with this forum for purposes of Pennsylvania's long-arm statute and the Due Process Clause of the United States Constitution.

9.    This Court may therefore properly maintain personal jurisdiction over Defendants in light of Defendants' extensive conduct within Pennsylvania and this judicial district in particular, and the exercise of personal jurisdiction complies with traditional notions of fair play and substantial justice.

## GENERAL ALLEGATIONS

10.    Plaintiff commenced his employment with Defendant GY on or about March 23, 2022, in the role of "Assistant Manager" at a wage of $60,000.00 per annum.

11.    In Plaintiff's designated role, he was initially supposed to be primarily responsible for assisting the "Manager" with the managerial aspects of the day-to-day operations of the Irwin Facility.  Further, Defendants directed Plaintiff to utilize his role as a "training period" with the expectation that he would eventually become the sole manager of the Irwin Facility.

12.    Contextually, the Irwin Facility was a retail sales facility and primarily engaged in the sale of tires and related products.  Contiguous to the Irwin Facility was a mechanics' shop, also

3

owned by Defendant GY, wherein services such as tire installation, alignments, and repairs were performed (hereinafter, the "Shop").

13.     Notably, the Shop's operational hours were fifty-four (54) hours per week.  The Irwin Facility's operational hours were forty (40) hours per week.

14.     Although Plaintiff was hired as an "Assistant Manager" of the Irwin Facility, from the outset of his employment, Defendants instructed him to tend to service calls which came into the Irwin Facility from customers in need of road-side assistance for tire installations and repairs (hereinafter, the "Road Calls").  Defendants directed Plaintiff to assume this job duty because there was a shortage of staff at the Shop.

15.     The manual labor required of Plaintiff to service a Road Call included but were not limited to: (i) the retrieval of tires from the stock supply; (ii) the transportation of tires to the customer's location; and (iii) the dismounting and mounting of tires at the customer's location.

16.     Oftentimes, Plaintiff was required to service the above-delineated Road Calls during late-night/early-morning hours, which further entailed Plaintiff to: (i) travel from his personal residence to the Shop; (ii) travel from the Shop to the customer's location; (iii) travel from the customer's location back to the Shop; and (iv) travel from the Shop back to his personal residence.

17.     Ultimately, Plaintiff's work in servicing the Road Calls comprised an overwhelming majority of his total workplace duties.  In fact, during the tenure of his employment with Defendants, Plaintiff performed very little workplace duties that were even tenuously related to the managerial aspects of the Irwin Facility.

18.     Throughout Plaintiff's employment tenure with Defendants, he worked an average of fifty-six (56) hours per week, including approximately four (4) to six (6) hours on Saturdays.

19.     On or about April 2022, Plaintiff's noticed a discrepancy between the hours he actually worked during the preceding pay period and those which were recorded on the wage statement which accompanied Plaintiff's paycheck.

20.     This discovery, in turn, prompted Plaintiff to review his weekly wage statements from the beginning of his employment with Defendants.  After doing so, Plaintiff discovered that Defendants were consistently compensating him for 43 hours per week, regardless of the number of hours which Plaintiff had actually worked.

21.     When Plaintiff raised the above-referenced wage discrepancy issue in-person with Defendant Meyers, Defendant GY's Center Manager, Defendant Meyers informed Plaintiff that he was "paid a salary" and "that's how Goodyear does it."   In response, Plaintiff balked at Defendant Meyers' statement, relaying that he was not going to perform additional work "for free." Defendant Meyers concluded the conversation by stating, "if this ain't for you, you need to let me know, and I'll file your paperwork."

22.     At all times relevant herein, Plaintiff's job duties with Defendants did not vest him with the authority, discretion, or independent judgment that would have been required for him to manage the day-to-day operations of the Irwin Facility and subordinate employees.  For example, Plaintiff did not have the authority to (i) hire or fire employees; (ii) coordinate the employee's schedules; or (iii) institute disciplinary measures against employees for insubordination or other unacceptable workplace behavior.

23.     Stated somewhat differently, although Plaintiff was hired as an "Assistant Manager" of the Irwin Facility, he was an "Assistant Manager" in label and title only because an overwhelming super-majority of his job duties consisted of completing Road Calls, and Plaintiff, rarely (if ever) assumed and/or performed any managerial duties.

24.     As such, At all times relevant hereto, Plaintiff was classified as a "non-exempt" employee pursuant to the FLSA and the MWA.

25.     On or about June of 2022, Plaintiff authored and sent an electronic message to Defendant GY's Chief Executive Officer, Mr. Gary Verland, and GY's Head of Human Resources Department, Mr. Rich Kramer (hereinafter, the "June E-mail"), wherein he submitted the following complaint:

> "*Gentlemen, good afternoon. I am emailing you with a list of complaints/concerns in regards to my position as Assistant Manager for which I feel that I am severely underpaid. I am currently assigned to a Commercial Tire Center that is open from 0730-1730 M-F and 0800-1200 on Saturday.*
>
> *I only get paid for 43.3333 hours a week. How does this work when I am at [the] shop everyday at those times? I also cover road calls, but whereas my techs make double time, I make NOTHING EXTRA to do the job they were hired for. Another issue I have is fuel, extra unnecessary mileage and wear and tear on MY vehicles to go the shop after hours to pull tires for the technicians as they do not have access to the building after hours. I started my employment with Goodyear 3/22/2022, and since then I have been shorted a minimum of 60 hours worth of overtime. We need to renegotiate the terms of my employment as well as compensation. Also, gentlemen, I am well aware of the chain of command, but typically matters such as these are taken care of quicker if one goes to the top first. I'm quite sure you will get in touch with my superiors, which will undoubtedly lead to some form of disciplinary action against me, and possibly my termination or forced resignation (which is against the law) because I sought an audience with executive leadership. You both are very busy and I completely understand. I just hope you can find the time to hear me out.*"

26.     Following the June E-Mail, Plaintiff was informed by Defendant GY's Human Resources Department that the June E-Mail had been intercepted and forwarded to an "integrity hotline;" that is, a third-party company retained by Defendant GY for the purpose of fleshing out whistleblower complaints.

27.     Approximately two days after the events set forth above, Plaintiff was contacted by a representative from Defendant GY's Human Resources Department requesting his feedback, details, and reasons for the June E-mail.  In response, Plaintiff explained that the manner in which he was being compensated (43 hours per week total) constituted an underpayment of wages and did "not sit well" with him.  Further, the representative informed Plaintiff that measures had been taken so that the June E-mail was precluded from ever reaching the intended recipients.

28.     Shortly thereafter, Plaintiff authored and transmitted an additional electronic message communication that was similar in nature to the June E-Mail.  However, as that e-mail was created and transmitted by utilizing a company computer at the Irwin Facility – to which Plaintiff no longer has access – a verbatim accounting cannot be provided at this time.

29.     Ensuing the events delineated above, Plaintiff was summoned to a meeting with Defendant Meyers and Defendant GY's District Manager, Defendant Morrell.   During that meeting, Plaintiff once again protested the fact that he was being paid by Defendants for 43 hours of work per week when he was working many more hours than that. In response, the gentlemen replied, "We all have to do what we have to do."

30.     On or about June 25, 2022, as Plaintiff was servicing a Road Call, he discovered that there was a "bulge" in the sidewall of the tire he was in the process of mounting on the customer's automobile.  Due to obvious safety concerns and potential regulatory violations, Plaintiff was unable to release the vehicle for travel and, therefore, contacted the service manager and requested delivery of a replacement tire.  Shortly thereafter, Defendant Meyers telephoned Plaintiff and told him, "It's your job to go get another tire."

31.     In response, Plaintiff stated to Defendant Meyers that it was not his (Plaintiff's) job to be servicing Road Calls and, upon his return to the Irwin Facility, he would be submitting his resignation.

32.     Given the facts delineated herein, Plaintiff was justified in tendering his resignation because he was performing workplace tasks that were not associated with his job title of Assistant Manager, and Defendants were not paying him for the hours that he actually accrued and was entitled to be paid.

**COUNT I**
**FAILURE TO PAY OVERTIME WAGES IN**
**VIOLATION OF THE FSLA**
**29 U.S.C. § 201,** *et seq.*
*Plaintiff v. Defendant GY, Defendant Meyers, Defendant Morell, individually and jointly as*
*Defendants*

33.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

34.     Prefatorily, the FLSA mandates two minimum rates of pay for time "employees" spend dedicated to workplace operations for covered "employers" who constitute an "enterprise engaged in commerce."  Pertinent here, the FLSA establishes a heightened rate of one hundred fifty percent multiplied by the employee's base rate of pay for any hours worked in excess of 40 hours within a seven-day period, commonly known as "overtime" or "time and a half" pay.  29 U.S.C. § 207.

   **A.** **Defendant GY, Defendant Meyers, and Defendant Morrell are all "employers"**
   **pursuant to 29 U.S.C. § 203 of the FLSA.**

35.     The FSLA defines the term "employer" expansively to include "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).

36.     In interpreting this broad phrase, the United States Court of Appeals for the Third Circuit has concluded that liability for violations of the FLSA attaches not just to the corporate entity itself, but also to the owners, officers, and supervisory personnel of the organization.  See *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 153 (3d Cir. 2014).

37.     Somewhat relatedly, The FLSA defines "employ" to mean "to suffer or permit to work."  29 U.S.C. § 203(g).

38.     First, Defendant GY extended a position-for-hire to Plaintiff with specified duties, start-times, pay-rates, and required equipment.  In its corporate capacity, Defendant GY possessed ultimate authority and control over Plaintiff and instructed Plaintiff to perform certain tasks for the financial benefit of Defendant GY.  At all times relevant hereto, Defendant GY exercised a position of power and authority over Plaintiff begetting that of an "employer" role in the relationship.

39.     Defendant GY controlled the general terms and conditions of Plaintiff's workplace duties, dictated the compensation structure and scheme, and mandated the wage keeping practices that Plaintiff was subjected to as a condition of employment.

40.     As a corporate entity responsible for the acts of its employees and/or agents acting withing the scope of their authority, Defendant GY "permitted" Plaintiff to work and is Plaintiff's "employer."

41.     As such, Defendant GY is an "employer" pursuant to 29 U.S.C. § 203(d) vis-à-vis Plaintiff and is therefore liable for violations of the FLSA.

42.     Second, Defendant Meyers specifically exerted influence and control over the terms and conditions of Plaintiff's employment, including the compensation structure and hours Plaintiff was expected to work.  Defendant Meyers further possessed the ability to hire and fire employees of Defendant GY and to significantly affect and/or alter the terms and conditions of

their employment, including Plaintiff.  Therefore, Defendant Meyers exercised a position of power and authority over Plaintiff begetting that of an "employer" role in the relationship sufficient to satisfy 29 U.S.C. § 203(d).

43.     Given Defendant Meyer's personal role in Defendant GY's unlawful workplace wage practice, delineated above, which he did while acting within the scope of his employment, Defendant Meyers is individually liable for the corresponding violations of the FLSA.

44.     Third, Defendant Morrell specifically exerted influence and control over the terms and conditions of Plaintiff's employment including the compensation structure and hours Plaintiff was expected to work.  Defendant Morrell further possessed the ability to hire and fire employees of Defendant GY and to significantly affect and alter the terms and conditions of their employment, including Plaintiff.  Therefore, Defendant Morrell exercised a position of power and authority over Plaintiff begetting that of an "employer" role in the relationship sufficient to satisfy 29 U.S.C. § 203(d).

45.     Given Defendant Morrell's personal role in Defendant GY's unlawful workplace wage practice, delineated above, which he did while acting within the scope of his employment, Defendant Meyers is individually liable for the corresponding violations of the FLSA.

**B.  Defendant GY is an "enterprise engaged in commerce" pursuant to 29 U.S.C. § 203(s)(1) of the FLSA.**

46.     29 U.S.C. § 203(s)(1) identifies the criteria necessary for the provisions of the FLSA to apply to an "enterprise" that is "engaged in commerce," elaborating as follows:

> "Enterprise engagement in commerce or in the production of goods for commerce" means an enterprise that (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual

gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1).

47.     Pursuant to this statutory section, the mandates of the FLSA apply to an organization/enterprise that satisfies two statutory criteria: (1) it must be engaged in "commerce," and (2) have an annual gross volume of sales not less than $500,000.00. 29 U.S.C. § 203(s)(1).

48.     Under the FLSA, the term "commerce" is specifically defined to include activities such as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

49.     In elaborating on the term "commerce," the Third Circuit concluded in *Marshall v. Brunner*, 668 F.2d 748, 751 (3d Cir. 1982), that an employer's use of out-of-state manufactured equipment which the employer transported in-state for its operations was sufficient to establish that the employer was an "enterprise engaged in commerce" under the FLSA.

50.     Defendant GY regularly manufactured products and subsequently shipped these products to entities outside the Commonwealth of Pennsylvania and the United States of America. The creation and shipment of goods destined for delivery to out-of-state entities was a mainstay of Defendant GY's operations and regularly occurred within the ordinary course of Defendant GY's business operations.

51.     Defendant GY purchased products, materials, equipment, and supplies necessary and integral for its business operations to and from out-of-state vendors for the express purpose of utilizing said materials, equipment, and supplies for its operations within Pennsylvania.

52.     Additionally, Defendant GY transmitted and received payments and credits from out-of-state vendors by and through the use of the internet, digital payment processing services which traverse state lines, and the United States Postal System.

53.     Therefore, Defendant GY regularly engaged in "commerce" for purposes of the first prong of 29 U.S.C. § 203(s)(1)(A)(i).

54.     Upon information and belief, Defendant GY had an annual dollar volume of sales in excess of $500,000, given that Defendant GY is a publicly traded company whose financials are transparent via their requisite earning reports that are filed with Securities Exchange Commission and/or otherwise made publicly available.

55.     Therefore, Defendant GY has an annual gross of sales in excess of $500,000 for purposes of the second prong of 29 U.S.C. § 203(s)(1).

56.     Accordingly, Defendant GY is an "enterprise engaged in commerce" under 29 U.S.C. §206(s)(1)(A)(i)

### C. **Plaintiff is an "employee" pursuant to 29 U.S.C. § 203 of the FLSA.**

57.     The FLSA defines "employee" to include any individual "employed by an employer" and excludes certain circumstances that are inapplicable to the instant facts, such as individuals employed by the United States Government or the United States Postal Service.   29 U.S.C. § 203(e)(1).

58.     To effectuate the remedial purpose of the FLSA, the Third Circuit interprets "employee" in an "exceedingly broad" manner. *Safarian v. Am. DG Energy Inc.*, 622 F. App'x 149, 151 (3d Cir. 2015), citing *Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991).

59.     In evaluating whether an individual is an "employee" under the FLSA, the Third Circuit examines the "economic reality" surrounding the workplace relationship and utilizes six factors to determine an individual's employment status:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials

> required for his task, or his employment of helpers; 4) whether the
> service rendered requires a special skill; 5) the degree of
> permanence of the working relationship; 6) whether the service
> rendered is an integral part of the alleged employer's business.

*Martin,* 949 F.2d at 1293, quoting *Donovan v. DialAmerica Mktg., Inc*., 757 F.2d 1376, 1382 (3d
Cir. 1985).

60.     "Not only should courts examine the circumstances of the whole activity, they
should [also] consider whether, as a matter of economic reality, the individuals are dependent upon
the business to which they render service." *Id.* (internal citation and quotation marks omitted).

61.     At all times relevant hereto, Defendants possessed and, in fact, exercised their right
to control Plaintiff's job duties and the manner in which he carried them out, namely with respect
to their directives that Plaintiff perform Road Calls and how and when to complete a Road Call.

62.     Plaintiff had no personal financial investment in Defendant GY's operations.  Nor
did Plaintiff have an opportunity to obtain extra renumeration based on the exercise of managerial
skill.  As alleged above, Plaintiff never had the chance to serve as an Assistant Manager or perform
the work duties associated with that job.

63.     Plaintiff did not utilize his own equipment while conducting Road Calls.  Nor was
Plaintiff permitted to dictate the assistance of other workers when performing Road Calls.

64.     In conducting the Road Calls, Plaintiff did not utilize "special skill" akin to that of
a licensed professional.

65.     Nonetheless, the workplace duties to which Plaintiff completed were an integral
component of Defendant GY's day-to-day operations, as evidenced by the time and energy that
Plaintiff expended during the Road Calls.

66.     Finally, Plaintiff was completely dependent on Defendants' business to perform his
job duties because customers contacted Defendant GY to obtain its particular services and, based

upon information and belief, Defendant GY is licensed by the Commonwealth of Pennsylvania as

an automobile, accessory parts distribution center and an autobody shop.

67.     Therefore, Plaintiff is an "employee" for purposes of the FLSA.

**D.  Defendants' Unlawful Manipulation of Plaintiff's Hours Worked Deprived Plaintiff
of Overtime Rates of Pay.**

68.     The FLSA mandates a heightened rate of one hundred fifty percent multiplied by

the employee's base rate of pay for any hours worked in excess of 40 hours worked within a seven-

day period.

69.     Specifically, 29 U.S.C. § 207(a)(1) provides:

> (1) Except as otherwise provided in this section, no employer shall
> employ any of his employees who in any workweek is engaged in
> commerce or in the production of goods for commerce, or is
> employed in an enterprise engaged in commerce or in the production
> of goods for commerce, for a workweek longer than forty hours
> unless such employees receives compensation for his employment
> in excess of the hours above specified at a rate not less than one and
> one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

70.     Given Defendants' status as an "employer" and an "enterprise engaged in

commerce," and Plaintiff's status as an "employee," Defendants were obligated to comply with

the overtime rate of pay requirements of the FLSA.

71.     That is, at all times hereto, Defendants were mandated to pay Plaintiff one hundred

fifty percent of his corresponding base rate of pay for any time he worked beyond 40 hours in a

seven-day period.  29 U.S.C. § 207.

72.     As previously averred in this Complaint, Plaintiff routinely and regularly worked

in excess of 40 hours per week.  Plaintiff therefore engaged in hours of work that Defendants

needed to compensate him at the overtime rate of pay.

73.     However, Defendants explicitly refused to pay Plaintiff overtime pay for the overtime hours that he worked.

74.     Instead, as averred above, Defendants implemented and effectuated a timekeeping practice that drastically deducted and/or discounted the overtime hours that Plaintiff had worked.

75.     Therefore, Defendants violated 29 U.S.C. § 207 in failing to pay Plaintiff overtime wages.

### E. **Defendants Willfully Violated the FLSA and an Award of Liquidated Damages is an Appropriate Remedy.**

76.     29 U.S.C. § 216(b) of the FLSA provides, in relevant part:

> Any employer who violates the provisions of section 206 or 207 of this title [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.
> …
> The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant and costs of the action.

29 U.S.C. § 216(b).

77.     An award of liquidated damages pursuant to the FLSA is not penal in nature, but rather, is viewed as a compensatory remedy. *Martin v. Selker Bros.*, 949 F.2d 1286, 1299 (3d Cir. 1991), citing *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583-84 (1942).

78.     Indeed, the Supreme Court of the United States has opined on the compensatory nature of this remedy, describing it as compensation for the "workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Schonewolf v. Waste Mgmt., Inc.*, No. 17-3745, 2018 BL 92619, at *5 (E.D. Pa. Mar. 19, 2018) citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707-08 (1945).

79.     Furthermore, the award of liquidated damages is mandatory unless an employer can make a "showing of good faith and reasonable grounds for its conduct." *Martin*, 949 F.2d at 1299.

80.     Defendants' willful and knowing actions described hereinabove were the direct and proximate cause that resulted in violations of Plaintiff's rights under the FLSA, deprivation of the statutorily required overtime rate of pay, and the total amount of Plaintiff's damages.

81.     Defendants are unable to meet their burden of establishing "good faith and reasonable grounds" for its violation of Plaintiff's rights.  This is demonstrated by Defendants' actions, statements, and practices, delineated above, which illustrate Defendants' willful animus in flagrantly disregarding its responsibilities and obligations as an employer.

82.     Therefore, Defendants are liable to Plaintiff for actual damages (lost wages), liquidated damages, as well as reasonable attorney's fees, costs, and expenses pursuant to 29 U.S.C. § 216(b).

83.     As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT II
## FAILURE TO REMIT OVERTIME WAGES IN VIOLATION
## OF THE MWA
### 43 Pa. Stat. §333.101, *et seq*.
### *Plaintiff v. Defendant GY, Defendant Meyers, Defendant Morrell, individually and jointly as Defendants*

84.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

85.     The MWA, much like its federal law counterpart in the FLSA, mandates a heightened rate of pay for any hour worked in excess of forty hours per work week.  See 43 P.S. § 333.104.

86.     Specifically, Section 4(c) controls the premium compensation rate for overtime hours and states, in relevant part:

> (c) Employees shall be paid for overtime not less than one and one-half times the employee's regular rate as prescribed in regulations promulgated by the secretary… And provided further, that the secretary shall promulgate regulations with respect to overtime subject to the limitations that no pay for overtime in addition to the regular rate shall be required except for hours in excess of forty hours in a workweek.

43 P.S. § 333.104(c).

87.     Nearly identical to the pertinent provision of the FLSA, the MWA defines "employer" to include "any association, corporation, individual, partnership," or "any person or group or persons acting, directly or indirectly, in the interest of an employer in relation to any employee." 43 P.S. § 333.103(g).

88.     Analogous to the case law interpreting the FSLA, the definition of "employer" is expansively construed to render corporate officers individually liable for violations of the MWA. See *Schneider v. IT Factor Prods.*, 2013 BL 341183, at *4 (E.D. Pa. Dec. 10, 2013), citing *Scholly v. JMK Plastering, Inc.*, 2008 BL 141013, at *4 (E.D. Pa. June 25, 2008).

89.     As previously averred, and for the same reasons Defendant GY is an "employer" for purposes of the FLSA, Defendant GY is also an "employer" for purposes of the MWA.

90.     Moreover, Defendant GY is a corporation organized under the laws of the Commonwealth of Pennsylvania, by and through which individuals are employed for a commercial purpose and the financial benefit of Defendant GY, within the state of Pennsylvania.

91.     As alleged hereinabove, and for the same reasons Defendant Meyers is an "employer" for purposes of the FLSA, Defendant Meyers is also an "employer" for purposes of the MWA.

92.     As averred above, and for same reasons Defendant Morrell is an "employer" for purposes of the FLSA, Defendant Morrell is also an "employer" for purposes of the MWA.

93.     The MWA defines "employee" to include "any individual employed by an employer." 43 P.S. § 333.103(h).

94.     In line with its FLSA counterpart, the definition of "employ" is broadly defined as to "suffer or permit to work." 43 P.S. § 333.103(f).

95.     In determining whether an individual is an "employee" within the MWA, the Commonwealth Court has held the "economic reality test" utilized within the framework of the FLSA is the applicable standard for making such a determination under the MWA. Commonwealth v. Stuber, 822 A.2d 870, 873 (Pa. Cmwlth. 2003).

96.     As previously averred, and for the same reasons Plaintiff is an "employee" for purposes of the FLSA, Plaintiff is also an "employee" for purposes of the MWA.

97.     Consequently, given Defendants' status as an "employer" and Plaintiff's status as an "employee," Defendants were obligated to comply with the overtime wage requirements of the MWA.

98.     However, as averred above, Defendants explicitly refused to pay Plaintiff any wages for the overtime hours that she worked.

99.     Therefore, Defendants violated 43 P.S. § 333.104(c) in failing to pay Plaintiff overtime wages.

100.    In addition, the MWA provides for the recovery of attorney's fees and costs and states, in relevant part:

> If any employee is paid by his or her employer less than the minimum wages provided by section 4 of this act [43 P.S. § 333.104] or by any regulation issued thereunder, such worker may recover in a civil action the full amount of such minimum wage less any amount actually paid to the worker by the employer, together with costs and such reasonable attorney's fees as may be allowed by the court… .

43 P.S. § 333.113.

101.    As such, Defendant is liable to Plaintiff for actual damages (lost wages), as well as reasonable attorney's fees, costs, and expenses pursuant to 43 P.S. § 333.113.

102.    As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

<u>**COUNT III**</u>
**FAILURE TO REMIT WAGES IN VIOLATION OF THE WPCL**
**43 P.S. § 260.1** *et seq.*
*Plaintiff v. Defendant GY, Defendant Meyers, Defendant Morell, individually and jointly as*
*Defendants*

103.    Plaintiff incorporates the allegations contained in in the paragraphs above, as if fully set forth at length herein.

104.    The WPCL provides the employee with a statutory remedy to enforce his rights where an employer breaches its fundamental contractual obligation to pay wages owed to said employee.  See *Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990).

105.    The "contract" between the employer and the employee governs the determination of the specific wages earned by the employee. *Id.*, citing *Sendi v. NCR Comten, Inc.*, 800 F.2d 1138 (3d Cir. 1986).

106.    This statutory remedy created by the WPCL creates both a private cause of action to any employee to whom "any type of wages" are owed and bestows "any court of competent jurisdiction" with the power to maintain such an action.  43 P.S. § 260.9a(b).

107.    The WPCL defines an "employer" to include every person, "association," or "corporation" and, further, "any agent or officer of any [corporation] employing any person in this Commonwealth."

108.    Defendant GY is a business "association" and/or "corporation" that employs individuals, including Plaintiff, within the geographic boundaries of the Commonwealth of Pennsylvania and, therefore, is an "employer" under 43 P.S. § 260.2a.

109.    As alleged hereinabove, and for the same reasons Defendant Meyers is an "employer" for purposes of the FLSA and the MWA, Defendant Meyers is also an "agent" or "officer" and, thus, an "employer" for purposes of the WPCL.

110. As averred above, and for same reasons Defendant Morrell is an "employer" for purposes of the FLSA and the MWA, Defendant Morrell is also an "agent" or "officer" and, thus, an "employer" for purposes of the WPCL.

111. As averred repeatedly throughout this Complaint, Defendants and Plaintiff have effectuated an employment relationship, whereby Plaintiff was an "employee." This factual reality remains true for purposes of the WPCL as well.

112. The WPCL defines "wages" to include all "earnings of an employee" and further includes within this definition any "fringe benefits or wage supplements." 43 P.S. § 260.2a.

113. Plaintiff has sufficiently accrued "wages" within the purview of 43 P.S. § 260.2a, because he engaged in the performance of workplace duties for Defendants in exchange for compensation in the form of an hourly rate commensurate with the time Plaintiff expended in performance of said duties.

114. Defendants have not asserted a dispute over the wages due and owing to Plaintiff and has not provided written notice of conceded or disputed wages associated with Plaintiff pursuant to 43 P.S. § 260.6.

115. The WPCL imposes a duty on each employer to pay its employees all wages due and owing on established regular paydays (hereinafter, the "Established Payday Procedure"), which is to be designated in advance by the employer. 43 P.S. § 260.3(a).

116. Defendants' Established Payday Procedure was the disbursement of employee pay on a bi-weekly basis.

117. Section 260.9a(b), in conjunction with Section 260.10 of the WPCL permit an employee to institute an action for wages and, further liquidated damages, that are not paid in accordance with the Established Payday Procedure. These statutory provisions state as follows:

Actions by an employe, labor organization, or party to whom any type of wages is payable to recover unpaid wages and liquidated damages may be maintained in any court of competent jurisdiction, by such labor organization, party to whom any type of wages is payable or any one or more employes for and in behalf of himself or themselves and other employes similarly situated, or such employe or employes may designate an agent or representative to maintain such action or on behalf of all employes similarly situated.  Any such employe, labor organization, party, or his representative shall have the power to settle or adjust his claim for unpaid wages.

43 P.S. §260.9a(b).

Where wages remain unpaid for thirty days beyond the regularly scheduled payday, or, in the case where no regularly scheduled payday is applicable, for sixty days beyond the filing by the employe of a proper claim or for sixty days beyond the date of the agreement, award or other act making wages payable, or where shortages in the wage payments made exceed five percent (5%) of the gross wages payable on any two regularly scheduled paydays in the same calendar quarter, and no good faith contest or dispute of any wage claim including the good faith assertion of a right of set-off or counter-claim exists accounting for such non-payment, the employe shall be entitled to claim, in addition, as liquidated damages an amount equal to twenty-five percent (25%) of the total amount of wages due, or five hundred dollars ($500), whichever is greater.

43 P.S. § 260.10.

118.    Per the above statutory provisions, Defendants were legally obligated to provide Plaintiff with his owed wages when he was not paid those wages for thirty days (30) beyond Defendant's Established Payday Procedure.

119.    By omission, Defendants have refused to pay Plaintiff all wages due and owing to him well beyond 30 days of the date of the Established Payday Procedure.

120.    As previously stated, the wages that were, are, and continue to be owing are those that have resulted from Defendant's implementation and utilization of a timekeeping practice that deducts hours that Plaintiff actually worked, as a matter of fact, from his bi-weekly wage statements.

121.    To date, Defendants have not paid Plaintiff the above-mentioned wages that are due and owing to Plaintiff as of the last Established Payday Procedure.

122.    As such, Defendants have violated 43 P.S. § 260.10 in failing to pay owed wages to Plaintiff.

123.    Additionally, Defendants have not asserted (and cannot assert) a good faith contest or dispute as to the amount of Plaintiff's disbursed wages.

124.    Defendants' actions described hereinabove were the direct and proximate cause that resulted in violations of Plaintiff's rights under the WPCL, deprivation of his statutory entitlement to accrued wages, and the total amount of Plaintiff's damages.

125.    Consequently, Plaintiff is entitled to an award of liquidated damages pursuant to 43 P.S. § 260.10.

126.    In addition, 43 P.S. § 260.9a(f) mandates that where a plaintiff obtains a favorable judgment, the plaintiff is entitled, as a matter of right, to an award of attorneys' fees:

> The court in any action brought under this section shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow costs for reasonable attorneys' fees of any nature to be paid by the defendant.

43 P.S. § 260.9a(f).

127.    As such, Plaintiff is also entitled to reasonable attorney's fees pursuant to 43 P.S. § 260.9a(f) that were incurred as a result of redressing Defendants' conduct described hereinabove.

128.    As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT IV**
**BREACH OF CONTRACT IN VIOLATION OF**
**PENNSYLVANIA COMMON LAW**
***Plaintiff v. Defendant GY***

129.    Plaintiff incorporates the allegations contained in in the paragraphs above, as if fully set forth at length herein.

130.    To establish an action sounding in breach of contract, a plaintiff must establish "(1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages." *Sullivan v. Chartwell Inv. Partners, L.P.*, 873 A.2d 710, 717 (Pa. Super. 2005), citing *J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc.*, 792 A.2d 1269 (Pa. Super. 2002).

131.    In a bona fide contractual offer, Defendant GY extended Plaintiff the opportunity to exchange his time and efforts, within the context of gainful employment with Defendants, for, amongst other things, a designated rate of $60,000.00 per annum.

132.    Plaintiff conveyed his acceptance of Defendant GY's offer, and the resulting employment contract manifested the parties' mutual assent that Plaintiff would be paid, according to the actual number of hours that worked, as a matter of fact, in a valid and enforceable contract that was legal binding upon both Plaintiff and Defendant GY (hereinafter, the "Employment Contract").

133.    However, by omission, Defendant GY refused to pay Plaintiff the requisite wages, as they were due and owing in a corresponding fashion to the number of hours that Plaintiff actually worked and, therefore, breached the Employment Contract on a multitude of occasions.

134.     Defendant GY's actions described hereinabove were the direct and proximate cause that resulted in breaches of the Employment Contract, deprived Plaintiff of his entitlement to accrued pay, and resulted in lost wages.

135.     As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiff has suffered tangible economic loss in the form of lost pay and is entitled to compensatory and consequential damages for Defendant's contractual breaches, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT V
## UNJUST ENRICHMENT IN VIOLATION OF
## PENNSYLVANIA COMMON LAW
### *Plaintiff v. Defendant GY*

136.     Plaintiff incorporates the allegations contained in in the paragraphs above, as if fully set forth at length herein.

137.     Pennsylvania recognizes the equitable doctrine of unjust enrichment wherein the courts may imply a "quasi contract" and require a defendant to compensate the plaintiff for the value of the benefit conferred.  *Curley v. Allstate Ins. Co.*, 289 F. Supp. 2d 614, 619 (E.D. Pa. 2003), citing *Crawford's Auto Center v. State Police*, 655 A.2d 1064, 1070 (Pa. Cmwlth. 1995).

138.     A plaintiff must show three elements to prove a cause of action of unjust enrichment: (1) a benefit conferred on a defendant by the plaintiff; (2) appreciation of such benefits by the defendant; and (3) acceptance and retention of such benefits by the defendant under such circumstances that it would be inequitable for the defendant to retain the benefit without paying its value.  *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999), citing *Schenck v. K.E. David, Ltd.*, 666 A.2d 327 (Pa. Super. 1995).

139.   Plaintiff conferred a benefit to Defendant GY by performing workplace duties and devoting hours of work that directly resulted in the financial and operational benefit of Defendant GY's business.

140.   Indeed, Plaintiff's performance of work hours to which he never received compensation, overtime time pay, or otherwise, as detailed and described above, constitutes a benefit that was directly conferred to Defendant GY.

141.   Defendant GY retained and accepted the benefit of Plaintiff's labor and services without issue, objection, or delay.

142.   By accepting Plaintiff's labor and services, and not paying Plaintiff for the hours he expended in performing the labor and services and failing to pay Plaintiff at a rate commensurate with number of hours Plaintiff worked, Defendant has been unduly enriched.

143.   As a matter of justice and fairness, it would be manifestly unjust and inequitable for Defendant GY to retain the benefit of the above-mentioned labor and services hours without paying Plaintiff due compensation.

144.   Defendant GY's actions described hereinabove were the direct and proximate cause of Defendant's unjust enrichment and the damages it owes Plaintiff for retaining a benefit without paying for its value.

145.   As a direct and proximate result of Defendant GY's conduct described hereinabove, Plaintiff has suffered tangible economic loss in the form of lost back pay and is entitled to recoup the amount of the benefit he conferred upon Defendant and that Defendant unjustly retained.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## PRAYER FOR RELIEF

For the above-stated reasons, Plaintiff respectfully requests this Honorable Court to enter judgment in his favor, and against Defendant and prays for relief as follows:

1. Declare and find that Defendant committed one or more of the following acts:

    i. Violated provisions of the FLSA in failing to pay Plaintiff overtime wages and did so willfully;

    ii. Violated provision of the MWA in failing to pay Plaintiff overtime wages and did so willfully;

    iii. Violated provisions of the WPCL in failing to remit wages to Plaintiff and did so willfully;

    iv. Breached the Employment Contract with Plaintiff in failing to pay Plaintiff an hourly rate commensurate with the number of hours that Plaintiff actually worked; and

    v. Was unjustly enriched at Plaintiff's expense in retaining the benefit of Plaintiff's labor and services and the number of hours that Plaintiff worked without providing Plaintiff with due compensation; and

2. Award unpaid overtime wages and other compensation denied or lost to Plaintiff to date by reason of Defendant's unlawful acts;

3. Award liquidated damages on all compensation due and accruing from the date such amounts were due in equal amounts pursuant to Plaintiff's overtime wages pursuant to the FLSA and/or the MWA;

4. Award compensatory and contractual damages as a result of Defendant's breach of contract;

5.   Disgorge the amount of the benefit that Defendant unlawfully retained and was unjustly enriched;

6.   Award pre-judgment and post-judgment interest where accorded by law;

7.   Award reasonable attorney's fees and costs of suit incurred prosecuting these claims;

8.   Award injunctive and other equitable relief as provided by law;

9.   Grant leave to amend to add claims under state and federal laws; and

10. Award such other and further relief as this Court deems just, equitable, and proper.

**JURY TRIAL DEMANDED ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date: December 1, 2022                    By: _____

Kyle H. Steenland (Pa. I.D. No. 327786)

The Workers' Rights Law Group, LLP
Foster Plaza 10
680 Andersen Drive, Suite 230
Pittsburgh, PA 15220
Telephone: 412.910.9592
Facsimile:  412.910.7510
kyle@workersrightslawgroup.com

*Attorney for Plaintiff*

## **VERIFICATION**

I, David Andrew Welsh, have read the foregoing Complaint in Civil Action and verify that the statements therein are correct to the best of my personal knowledge, information and/or belief. I understand that this verification is made subject to the penalties of 18 Pa. C.S.A. 4904 relating to unsworn falsification to authorities, which provides that if I knowingly make false averments, I may be subject to criminal penalties.


Dated: December 1, 2022                    _____

                                                    Plaintiff